| | | |
|---|---|---|
| GERALD P. GORDON and<br>TAHARA D. BROWN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:12 CV 18 |
| | ) | |
| BANK OF NEW YORK MELLON<br>CORPORATION, SAFEGUARD<br>PROPERTIES, LLC, and JOHN DOE<br>CORPORATION | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## OPINION AND ORDER

Defendants Bank of New York Mellon Corporation (DE # 27) and Safeguard Properties, LLC (DE # 18) have both moved to dismiss Counts A, B, D, E, and F of plaintiffs Gerald Gordon and Tahara Brown's complaint. For the following reasons, those motions are granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 22, 2010, plaintiffs purchased property in Newton County, IN, located at 1984 W. State Road 10, Lake Village, IN 46349. (DE # 8 at ¶ 9.) This property is referred to as Lots 2, 3, 4, and 6 of JL Walker's 6th Subdivision. (*Id.*) There is a single family residence on Lots 3 and 4. (*Id.*) Plaintiffs purchased this property with cash, and do not have any outstanding loans or mortgages associated with the property. (*Id.* at ¶ 10.) The property abutting plaintiffs' property to the north and the south was at one point owned by Steven Ashcraft. (*Id.* at ¶ 11.) In 2006, the CIT Group/Consumer

Finance, Inc. foreclosed on the property owned by Ashcraft, and in 2009, the CIT Group/Consumer Finance, Inc. assigned its rights in the Ashcraft property to defendant Bank of New York Mellon Corporation ("BONY"). (*Id.* at ¶¶ 12-14.)

Plaintiffs moved into their house at 1984 W. State Road 10, Lake Village, IN in 2010. (*Id.* at ¶ 16.) Plaintiffs also own a house in Arizona, and in December 2010, plaintiffs left for Arizona. (*Id.* at ¶¶ 16-17.) Prior to leaving for Arizona, plaintiffs winterized and secured their house. (*Id.*) In May of 2011, while still in Arizona, plaintiffs learned that someone had mowed their lawn. (*Id.* at ¶ 18.) On June 2, 2011, plaintiffs had a friend check on the house for them. (*Id.* at ¶ 19.) Plaintiffs' friend found a sticker at the home, which identified defendant Safeguard Properties ("Safeguard") as a contractor which had been to the house to perform work. (*Id.* at ¶¶ 19-20.) Plaintiffs' friend also observed that the door to the house was unlocked, and went inside, where he discovered that much of plaintiffs' personal property had been removed from the home. (*Id.* at ¶¶ 21-22.) Additionally, the house itself was trashed, and there were dead animals inside. (*Id.* at ¶ 22.) Plaintiffs' friend informed plaintiffs of what he had found. (*Id.* at ¶¶ 21-22.)

After learning of the condition of the house, plaintiffs called the police and filed a police report. (*Id.* at ¶ 23.) Plaintiffs also called Safeguard and other entities to try to figure out who had been to the house and for what reason. (*Id.* at ¶ 24.) Safeguard and the other entities plaintiffs contacted were not forthcoming with information. (*Id.*) On June 7, 2011, plaintiffs had all of the locks at the house replaced. (*Id.* at ¶ 25.)

On August 11, 2011, plaintiffs returned from Arizona to find that the back door of the house had been broken and was standing open. (*Id.* at ¶ 26.) They also discovered that all of the doors in the house were damaged, and the inside of the house was trashed. (*Id.*) Most of plaintiffs' personal property was gone, and there were signs that the house had been winterized by a contractor. (*Id.*)

Plaintiffs eventually learned that their property had been listed by defendant BONY with a local realtor, Landmark Realty ("Landmark"). (*Id.* at ¶ 29.) Landmark had an online listing which contained pictures of plaintiffs' property. (*Id.*) The listing identified the house as being part of the property listed for sale. (*Id.*) Plaintiff Gerald Gordon contacted Landmark, and was told that Landmark had informed BONY that plaintiffs' house was not part of the property that BONY owned. (*Id.* at ¶ 30.) Mr. Gordon was also informed that Landmark had actually contacted the Newton County Building Inspector to confirm that BONY did not own the house. (*Id.*)

Plaintiffs allege that defendants BONY, and/or its agents and contractors, ordered the listing of plaintiffs' property with Landmark. (*Id.* at ¶ 31.) Additionally, plaintiffs allege that BONY and/or its agents and contractors knew that BONY had no legal interest in plaintiffs' property because of the assignment of the property, the recorded property records, and other information they obtained about the property.[1] (*Id.*) Plaintiffs also allege that despite this knowledge, BONY ordered contractors to

---

[1] Because plaintiffs have alleged that defendants knew BONY had no legal interest in plaintiffs' property, in part, because of the recorded property records, it is reasonable to infer that defendants also knew plaintiffs were the owners of the property.

break into the house, change the locks, remove personal property, winterize the house, and cause other damage to plaintiffs' house. (*Id.*) Plaintiffs further allege that defendants hired agents and/or contractors, including defendant John Doe Corporation, to seize plaintiffs' home and property and set it for sale, despite knowing that these actions would cause injury to plaintiffs. (*Id.* at ¶ 32.)

On March 22, 2012, plaintiffs filed the current action against defendants. In their complaint, plaintiffs bring the following claims against all defendants: Civil conspiracy (Count A), violations of the Indiana Crime Victim's Relief Act (Count B), trespass (Count C), intentional infliction of emotional distress (Count D), invasion of privacy (Count E), violations of the fair Debt Collection Practices Act (Count F), and negligent hiring and supervision (Count H). Additionally, plaintiffs have brought a negligence claim against defendant BONY (Count G). Defendants Safeguard (DE # 18) and BONY (DE # 27) have now moved to dismiss Counts A, B, D, E, and F of plaintiffs' complaint.

## II. LEGAL STANDARD

Defendants have moved to dismiss plaintiffs' claims under RULE 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE for failure to state a claim upon which relief may be granted. A judge reviewing a complaint under a RULE 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-movant's favor. *Erickson v. Pardus* , 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the FEDERAL RULES OF CIVIL PROCEDURE, the

complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy RULE 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

However, the plaintiff does not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the

court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. ANALYSIS[2]

### A. Civil Conspiracy (Count A)

Plaintiffs contend that defendants engaged in a civil conspiracy to commit all of the other torts alleged in the complaint. (DE # 8 at 4.) Both Safeguard and BONY have now moved to dismiss plaintiffs' civil conspiracy claim. (DE # 19 at 9-10; DE # 28 at 4-5.) Specifically, defendants argue that plaintiffs have failed to allege sufficient factual support to put them on notice of the factual basis for plaintiffs' civil conspiracy claim. (DE # 19 at 9-10; DE # 28 at 4-5.)

As both defendants correctly point out, civil conspiracy is not an independent cause of action in Indiana. *Heyser v. Noble Roman's Inc.*, 933 N.E.2d 16, 20 (Ind. Ct. App. 2010). Instead, Indiana allows a cause of action for damages resulting from a civil conspiracy, *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998), and a "civil conspiracy must be alleged with an underlying tort." *Noble Roman's Inc.*, 933 N.E.2d at 20. Indiana defines a civil conspiracy as "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some

---

[2] As noted above, defendant BONY and defendant Safeguard have both moved to dismiss Counts A, B, D, E, and F of plaintiffs' complaint. Defendants often make the same arguments regarding the same claims, and the court will address those arguments together. When necessary, the court will note the differences between plaintiffs' allegations against each defendant and defendants' separate arguments regarding those allegations.

purpose, not in itself unlawful, by unlawful means." *DeBrota*, 703 N.E.2d at 168. "It has been made clear that in order to state a claim upon which relief can be granted [on a civil conspiracy claim], a plaintiff 'must allege a concerted action in the commission of a tort that resulted in damages.'" *Smith v. Housing Authority of South Bend*, 744 F. Supp. 2d 775, 787 (N.D. Ind. 2010) (quoting *K.M.K. v. A.K.*, 908 N.E.2d 658, 663 (Ind. Ct. App. 2009)); *see also Iom Grain, LLC v. ZEA Global Seeds, SA*, No. 1:10–CV–337, 2011 WL 5006314, at *14 (N.D. Ind. Oct. 20, 2011) ("As long as a complaint properly alleges damages resulting from a conspiracy to commit an underlying tort, it survives a motion to dismiss.").

In this case, plaintiffs have alleged that defendant BONY, despite possessing knowledge that it had no interest to plaintiffs' property, ordered its contractors and agents to break into plaintiffs' home, change the home's locks, remove personal belongings from the home, winterize the home, and generally cause damage to the home. (DE # 8 at ¶ 31.) Plaintiffs have also alleged that defendant Safeguard was one of the contractors that BONY had do this work for it, despite Safeguard having knowledge that BONY had no legal interest in the property.[3] (*See id.* at ¶¶ 20, 22, 31.) This is the

---

[3] In their complaint, plaintiffs allege that defendant BONY, and its agents and contractors knew that BONY did not hold a legal interest in plaintiff's property. (*See* DE # 8 at ¶ 31.) Although the complaint does not explicitly list Safeguard in that paragraph, plaintiffs have alleged that Safeguard was a contractor that had been to their house to perform work. (*Id.*) In ruling on defendants' motions to dismiss, the court must construe all reasonable inferences in plaintiffs' favor, *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 985 (7th Cir. 2013), and it is reasonable to infer that when plaintiffs reference contractors in paragraph 31 of their complaint, they are referring to defendant Safeguard. Additionally, that paragraph sufficiently alleges that Safeguard knew that BONY held no legal interest

alleged conduct that forms the basis for plaintiffs' tort claims, which plaintiffs have alleged resulted in damages. *See Strauss v. Stratojac Corp.*, 810 F.2d 679, 684 n.4 (7th Cir. 1987) ("[L]iability in a civil conspiracy is for the damages arising from the acts committed pursuant to the conspiracy . . . ." (applying Indiana law)). Thus, plaintiffs have alleged a concerted action in the commission of a tort that resulted in damages, and plaintiffs' allegations are sufficient to state a claim for damages resulting from a civil conspiracy. *Smith*, 744 F. Supp. 2d at 787.[4]

Defendant Safeguard also argues that plaintiffs' civil conspiracy claim must be dismissed because plaintiffs have failed to allege an unlawful purpose or allege any concerted acts between identifiable parties to accomplish that purpose. (DE # 19 at 10.) Plaintiffs, have, however, alleged that despite BONY and Safeguard having knowledge that BONY had no legal interest in plaintiffs' property, BONY instructed Safeguard to break into plaintiffs' home, dispose of the possessions inside the home, and ransack the home. (*See* DE # 8 at ¶ 31.) This sufficiently puts defendants on notice of the alleged

in plaintiffs' property. (*See* DE # 8 at ¶ 31 ("BONY, and/or its agents and contractors, knew . . . that [BONY] held no legal interest whatsoever in Plaintiffs' property.")).

[4] In its reply brief, defendant BONY argues that plaintiffs' conspiracy claim must be dismissed because any damages plaintiffs would be awarded under a civil conspiracy theory would be redundant because those damages will be awarded to plaintiffs if they are successful on their other claims. (DE # 38 at 1-2.) BONY makes this argument for the first time in its reply brief, however, it is therefore waived. *Nunez-Moron v. Holder*, 702 F.3d 353, 357 n.7 (7th Cir. 2012).

unlawful purpose and concerted acts of the conspiracy, and Safeguard's argument therefore fails.[5]

Defendants' motions to dismiss will accordingly be denied as they relate to plaintiffs' civil conspiracy claim.

### B. Indiana Crime Victim's Relief Act (Count B)

In Count B of their amended complaint, plaintiffs allege that defendants are liable for violations of the Indiana Crime Victim's Relief Act, IND. CODE § 34-24-3-1. (DE # 8 at 4-5.) "The Indiana Crime Victim's Relief Act . . . permits victims of certain crimes who have suffered a pecuniary loss to recover treble damages from the perpetrator." *Sharkey v. Cochran*, No. 1:09–cv–0517, 2012 WL 967057, at *5 (S.D. Ind. Mar. 21, 2012). To recover under the Indiana Crime Victim's Relief Act, a plaintiff need not prove that a defendant was actually convicted of a crime. *Quicken Loans, Inc. v. Downing*, No. 1:10–cv–1565, 2012 WL 4762411, at *4 (S.D. Ind. Oct. 5, 2012). Instead, a plaintiff must prove that the defendant committed the alleged crime by a preponderance of the evidence. *Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999). "[B]ecause the statute is punitive, the Indiana Crime Victim's Relief Act is to be strictly construed." *Downing*, 2012 WL 4762411, at *4.

---

[5] As both defendants correctly point out in their briefs in support of their motions to dismiss, the allegations specifically listed in plaintiffs' conspiracy count are insufficient to state a claim for damages resulting from a civil conspiracy. (DE # 19 at 10; DE # 28 at 4.) The factual allegations that precede that count are sufficient to survive a motion to dismiss on that claim, however, and this argument therefore fails.

In their amended complaint, plaintiffs specifically allege that defendants violated the Indiana Crime Victim's Relief Act by committing the following crimes: criminal mischief (DE # 8 at ¶ 35), residential entry (*id.* at ¶ 36), criminal trespass (*id.* at ¶ ¶ 37-39), theft (*id.* at ¶ 40), and conversion (*id.* at ¶ 41). "A victim claiming relief under the [Indiana Crime Victim's Relief Act] must prove by a preponderance of the evidence all elements of the alleged criminal conversion, including the requisite criminal intent." *Palmer Dodge, Inc. v. Long*, 791 N.E.2d 788, 791 (Ind. Ct. App. 2003). To prove their claims of residential entry (IND. CODE § 35-43-2-1.5), criminal trespass (IND. CODE § 35-43-2-2(a)), theft (IND. CODE § 35-43-4-2(a)), and conversion (IND. CODE § 35-43-4-3(a)), plaintiffs will have to show that defendants "knowingly or intentionally" committed those crimes by a preponderance of the evidence. For their criminal mischief claim, plaintiffs will have to prove that defendants committed that crime "recklessly, knowingly, or intentionally" by a preponderance of the evidence. IND. CODE § 35-43-1-2(a).

Defendant BONY (DE # 28 at 5-6) and defendant Safeguard (DE # 19 at 5-7) both argue that plaintiffs have failed to allege any facts to support their claims that defendants had the criminal intent required to be held liable for any of these claims. Both defendants correctly point out that the paragraphs under plaintiffs' Indiana Crime Victim's Relief Act Count (DE # 8 at ¶¶ 34-43) simply list the elements of the various crimes that provide the basis for plaintiffs' Indiana Crime Victims' Relief Act claims, which the court may disregard in evaluating defendants' motions to dismiss. (DE # 28

10

at 5; DE # 19 at 6); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Plaintiffs, however, incorporate the factual allegations from the previous paragraphs into their Indiana Crime Victim's Relief Act Count, including the allegation that:

> *BONY, and/or its agents and contractors*,[6] knew from its assignment, the recorded property records[,] and information obtained about the property that it held no legal interest whatsoever in Plaintiffs' property. Despite having this knowledge, it proceeded to order and or/authorize contractors to break into the Plaintiff's home, change the locks, dispose of possessions in the home, winterize the home, ransack the home[,] and otherwise cause damage to the Plaintiff's home.

(DE # 8 at ¶ 31. (emphasis added)).

Neither BONY nor Safeguard have directly addressed this paragraph of plaintiffs' complaint. (*See* DE # 19, DE # 28.) These allegations, however, taken as true, which the court must do while reviewing defendants' motions to dismiss, are sufficient to allege that defendants BONY and Safeguard had the criminal intent required by the specific offenses under the Indiana Crime Victim's Relief Act. (*See* IND. CODE § 35-41-2-2(a) ("A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so."); IND. CODE § 35-41-2-2(b)("A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."). Therefore, defendants' argument on this issue fails.[7]

---

[6] As noted above, it is reasonable to infer that Safeguard is one of the contractors plaintiffs are referring to in this portion of the complaint. *See supra* note 3.

[7] In its reply brief, defendant Safeguard argues that plaintiffs' claims under the Indiana Crime Victim's Relief Act must be dismissed because the facts plaintiffs have alleged in support of that claim give rise to an "obvious alternative explanation." (DE # 36 at 5); *see also Iqbal*, 556 U.S. at 682 ("As between that 'obvious alternative explanation' for

Defendant BONY also argues that plaintiffs have failed to allege facts sufficient to state a claim for criminal trespass under IND. CODE § 35-43-2-2(a)(1), which states that "[a] person who . . . not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent . . . commits criminal trespass[.]" IND. CODE § 35-43-2-2(a)(1); (DE # 28 at 5.) Although BONY argues that plaintiffs' criminal trespass claim under IND. CODE § 35-43-2-2(a)(1) (DE # 8 at ¶ 37) has several deficiencies, the court need only address one: there is no allegation regarding who denied the bank entry into plaintiffs' home or even that there was a denial of entry at all.[8] (*See* DE # 28 at 5.) The allegations in plaintiffs' complaint make clear that the alleged break-ins at their home occurred while they were in Arizona, and there are no allegations that the plaintiffs or anyone else ever denied any defendant entry into their home. Therefore, plaintiffs have failed to allege facts sufficient to state a claim for criminal trespass under IND. CODE § 35-43-2-2(a)(1), and that claim will be dismissed.[9] (DE # 8 at ¶ 37.)

---

the arrests, *Twombly, supra,* at 567, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion."); *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). Safeguard raises this argument for the first time in its reply brief, however, and it is therefore waived. *Nunez-Moron,* 702 F.3d at 357 n.7 (7th Cir. 2012).

[8] Plaintiffs have not responded to this argument.

[9] Although only defendant BONY made this argument, because it applies equally to Safeguard, and because plaintiffs had an opportunity to respond to the argument, the court will dismiss this claim against both BONY and Safeguard. *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 280 (7th Cir. 1986) ("Where one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary

## C. Intentional Infliction of Emotional Distress (Count D)

Plaintiffs also contend that defendants are liable for the tort of intentional infliction of emotional distress ("IIED"). ((DE # 8 at 5-6.) In order to establish the tort of IIED under Indiana law, a plaintiff must show that the defendant "(1) engage[d] in extreme and outrageous conduct; (2) which intentionally or recklessly; (3) causes; (4) severe emotional distress to another."*Waldrip v. Waldrip*, 976 N.E.2d 102, 117 (Ind. Ct. App. 2012). "The requirements to prove this tort are rigorous." *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind. Ct. App. 2005).

Defendant BONY first argues that the allegations regarding plaintiffs' IIED claim are insufficient to constitute "extreme and outrageous" conduct, as required by Indiana law. (DE # 28 at 6-7.) "Intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Stice*, 838 N.E.2d at 457. Indiana courts look to the Restatement in determining whether conduct is "extreme and outrageous":

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so

---

judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion."); *see Hecking v. Pan Am. Airways*, No. 1:03-cv-1895, 2006 WL 2598265, at *3 n.1 (S.D. Ind. Sept. 11, 2006) (applying *Malak* in 12(b)(6) context).

> extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009) (quoting Restatement (Second) of Torts § 46, cmt. D). "[C]ourts applying Indiana law may, in appropriate cases, determine what constitutes extreme and outrageous conduct as a matter of law." *Rowe v. Gary Hous. Auth.*, No. 2:06 CV 291, 2008 WL 754254, at *5 (N.D. Ind. Mar. 18, 2008).

In response to defendant BONY's argument, plaintiffs state that they and defendant BONY "have different opinions as to what is 'outrageous.'" (DE # 35 at 6.) Unfortunately, in their initial briefs, neither defendant BONY nor plaintiffs cite any cases giving specific examples of what does or does not constitute "extreme and outrageous" conduct under Indiana law. (*See* DE # 28 at 6-7; DE # 35 at 6.) In its reply brief, defendant BONY does cite two cases in support of its argument that the alleged conduct in this case was not "extreme and outrageous." (DE # 38 at 3-4.) Those cases, however, discuss IIED claims regarding the treatment of human corpses, *Johnson ex rel. Ind. Dep't of Child Servs. v. Marion Cnty. Coroner's Office,* 971 N.E.2d 151 (Ind. Ct. App. 2012)*; York v. Fredrick*, 947 N.E.2d 969 (Ind. Ct. App. 2011), and are not sufficiently analogous to provide any real insight into analyzing the alleged conduct in this case.

Through its own research, the court was only able to find one case from Indiana or a federal court in the Seventh Circuit dealing with an IIED claim in the context of the

14

alleged destruction of a home. In *Honaker v. Smith*, the plaintiff alleged that the

defendant burned down the plaintiff's home in an attempt to get him to leave town.[10]

256 F.3d 477, 491-93 (7th Cir. 2001). In that case, the Seventh Circuit analyzed whether

the alleged conduct was "extreme and outrageous," and concluded that "intentionally

causing a person's house to be set on fire in an effort to force him to leave town also

would be deemed to 'go beyond all possible bounds of decency . . . and be regarded as

intolerable in a civilized community.'" *Id.* at 492 (citing *Kolegas v. Heftel Broad. Corp.*, 607

N.E.2d 201, 211 (1992)).

In this case, plaintiffs have alleged that defendants knew that BONY had no legal

interest in plaintiffs' property, but BONY still instructed Safeguard to enter plaintiffs'

home, remove personal property from the home, and basically trash the home. This

alleged conduct, if true, is similar enough to the conduct in *Honaker* that the court

cannot conclude, as a matter of law, that this conduct is not "extreme and outrageous."

Therefore, defendant BONY's motion to dismiss plaintiffs' IIED claim is denied as it

relates BONY's argument that the alleged conduct in this case was not "extreme and

outrageous."

Both defendants also argue that plaintiffs have failed to allege that defendants

intended to inflict emotional harm on plaintiffs through their actions. (DE # 19 at 7-8;

---

[10] Although *Honaker* is a Seventh Circuit case applying Illinois law, Illinois law regarding the tort of intentional infliction of emotional distress is analogous to Indiana law. *See Neal v. Rock-Tenn Co.*, No. 1:03CV0801, 2005 WL 1939955, at *11 n.8 (S.D. Ind. April 20, 2005) ("Illinois law on intentional infliction of emotional distress is similar to Indiana law as both require extreme and outrageous conduct.").

DE # 28 at 6.) In response, plaintiffs contend that they have adequately alleged that defendants intended to cause them emotional harm. (*See* DE # 30 at 7; DE # 35 at 6.)

The Indiana Supreme Court adopted the tort of intentional infliction of emotional distress in *Cullison v. Medley*. 570 N.E.2d 27, 31 (Ind. 1991); *see also Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (2009). In that case, the court adopted the Restatement's definition of intentional infliction of emotional distress, which provides the elements listed above. *Cullison*, 570 N.E.2d at 31. In *Cullison*, the court also stated that "[i]t is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Id.* The intentional infliction of emotional distress occurs, however, "not only where an actor desires to inflict severe emotional distress, but also where he knows that such distress is certain, or substantially certain, to result from his conduct." *Chivers v. Central Noble Comm. Schools,* 423 F. Supp. 2d 835, 857 (N.D. Ind. 2006); *see also Arizanovska v. Wal-Mart Stores, Inc.*, No. 1:09–cv–1404, 2011 WL 4402561, at *7 (S.D. Ind. Sept. 22, 2011) (same); *Bradley v. Hall*, 720 N.E.2d 747, 752 n.6 (Ind. Ct. App. 1999).

In this case, plaintiffs have alleged that defendant BONY knew that it had no interest in plaintiffs' property. (DE # 8 at ¶ 31.) Additionally, plaintiffs allege that, despite this knowledge, defendant BONY ordered contractors to break into plaintiffs' home, remove personal property, and otherwise generally ransack the home. (*Id.*) Although plaintiff may not have specifically alleged that defendant BONY intended to cause emotional harm by its alleged actions, these facts sufficiently allege that

defendant BONY knew that severe emotional distress was "certain, or substantially certain, to result from [its] conduct." *Chivers,* 423 F. Supp. 2d at 857. Therefore, defendant BONY's argument on this issue fails.

As for defendant Safeguard, as noted above, plaintiffs have alleged that Safeguard knew that BONY had no legal interest in plaintiffs' property. (*See* DE # 8 at ¶ 31.) Additionally, plaintiffs have alleged that despite this knowledge, defendant Safeguard followed BONY's instructions, broke into plaintiffs' house, removed personal property, and generally trashed the house. (DE # 8 at ¶¶ 19-22, 31.) As with defendant BONY, although plaintiffs have not alleged that defendant Safeguard intended to cause emotional harm by its alleged actions, these facts are sufficient to allege that defendant Safeguard knew that severe emotional distress was "certain, or substantially certain, to result from [its] conduct." *Chivers,* 423 F. Supp. 2d at 857. Therefore, defendant Safeguard's argument on this issue fails.

Defendants' motions to dismiss will be denied as they relate to plaintiffs' intentional infliction of emotional distress claim.

### D. Invasion of Privacy (Count E)

Both defendants have moved to dismiss plaintiffs' invasion of privacy claim. (DE # 19 at 8; DE # 28 at 7.) Plaintiffs do not contest the dismissal of this claim. (DE # 30 at 7; DE # 35 at 7.) Accordingly, plaintiffs' invasion of privacy claim will be dismissed.

### E. Violations of the Fair Debt Collection Practices Act (Count F)

Plaintiffs have also alleged that defendants violated the Fair Debt Collection Practices Act through their alleged conduct. (DE # 8 at 7.) Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA therefore prohibits debt collectors from using "false, deceptive, or misleading representation[s] or means" and "unfair or unconscionable means" while collecting or attempting to collect any debt. *Id.* §§ 1692e & 1692f.

Defendant BONY first argues that plaintiffs' FDCPA claim must be dismissed because plaintiffs were not "consumers" as that word is defined under the FDCPA. (DE # 28 at 8-9.) The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). BONY argues that plaintiffs have not alleged that they were obligated to pay a debt or that BONY has ever alleged that plaintiffs were obligated to pay a debt. (*See* DE # 28 at 8-9.) In response, plaintiffs correctly point out that the FDCPA protects not only those people who are obligated to pay a debt, but also those people who are allegedly obligated to pay a debt, even if there is not an actual debt. (DE # 35 at 7.) Plaintiffs argue that because they have alleged that BONY undertook collection activities by taking nonjudicial action to dispossess

them of their property, they have properly alleged that they are consumers under the FDCPA. (DE # 35 at 7-8.)

It is important to first note that plaintiffs do not appear to contest defendant BONY's argument that there is no allegation that plaintiffs actually owed any debt. As defendant BONY correctly points out (DE # 28 at 8-9), plaintiffs have alleged that they purchased their property with cash and have no outstanding loans or mortgages on the property. (DE # 8 at ¶ 10.) Thus, plaintiffs argument that they meet the FDCPA's definition of "consumer" is limited to the argument that they were allegedly obligated to pay a debt. (DE # 35 at 7-8.) Plaintiffs argument is that because they have alleged that defendants undertook collection activities, specifically, that BONY took nonjudicial action to dispossess plaintiffs of their property, that this "presupposes that [BONY] alleged or asserted that the owner of [plaintiffs' property] was obligated to pay a debt." (*Id.*)

Plaintiffs base this argument on *Bridge v. Ocwen Federal Bank, FSB*, a case from the Sixth Circuit. 681 F.3d 355 (6th Cir. 2012). Plaintiffs direct the court to the following language from *Bridge*: "[T]he pursuit of collection activities presupposes that the collector alleges or asserts that the subject of those activities is obligated [to pay a debt]." *Id.* at 362. As BONY points out in its reply brief (DE # 38 at 4), however, the facts of the *Bridge* case are extremely different than the facts of the case at hand. In *Bridge*, the plaintiffs alleged that defendants sent them threatening letters, made "endless"

collection phone calls, assessed late fees, and threatened to foreclose on the plaintiffs'
property, despite the fact that there was no actual debt owed. *Bridge*, 681 F.3d at 358.

The court agrees with the *Bridge* court that in situations where conduct is
inherently associated with the collection of a debt (i.e. debt collection letters, debt
collection phone calls, other threats regarding collection of a debt), "the pursuit of
collection activities presupposes that the collector alleges or asserts that the subject of
those activities is obligated [to pay a debt.]" *Bridge*, 681 F.3d at 362. In this case,
however, the alleged conduct that plaintiffs assert constitutes collection activity, that
defendants broke into plaintiffs' home, removed plaintiffs' personal belongs, and
trashed plaintiffs' home, is not inherently associated with the collection of a debt.
Moreover, there has been no allegation that plaintiffs owed any debt, or that any
defendant alleged that plaintiffs owed a debt, or even mentioned that a debt existed. All
that has been alleged is that defendant BONY ordered contractors to break into
plaintiffs' home, remove personal property, and trash the home. There are no
allegations that any defendant made any sort of communication, threat, or any mention
regarding a debt owed by plaintiffs. Without any sort of allegation that these acts were
done in an attempt to collect a debt, they are not sufficient to bring plaintiffs under the
protection of the FDCPA.[11]

---

[11] Although plaintiffs do not cite this portion of their complaint in responding to
BONY's argument, plaintiffs do allege that defendants violated the FDCPA by "[t]aking
any nonjudicial action to effect dispossession or disablement of property when there is no
present right to possession of the property claimed as collateral through an enforceable
security interest in violation of 15 U.S.C. § 1692(f)(6)" (DE # 8 at ¶ 70 (quoting 15 U.S.C.

Defendant BONY also argues that plaintiffs' FDCPA claim must be dismissed because there was no attempt to collect a debt in this case. (DE # 28 at 9-10.) This argument goes hand in hand with BONY's argument that plaintiffs were not consumers, but because plaintiffs raise additional arguments in support of their FDCPA claim while responding to this argument, the court will address this argument separately.

If there was no attempt to collect a debt in this case, plaintiffs do not have a claim for the violation of the FDCPA. *Brown v. Budget Rent–A–Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) (noting a threshold requirement to an FDCPA claim is that "the prohibited practices alleged were used in an attempt to collect a debt as defined by the [FDCPA]."); *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87-88 (4th Cir. 1994) ("Congress enacted the FDCPA to protect consumers from unfair debt collection practices. Consequently, a threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'" (citations omitted)); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir. 1987) ("A threshold requirement for application of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt[.]'"); *Isaacson v. Saba Comm. Servs. Corp.*, 636 F. Supp. 2d 722, 724 (N.D.Ill. 2009) ("To bring a successful claim under FDCPA, plaintiff must show: 1)

_____

§ 1692f(6)). While this allegation does mention a security interest, which could indicate the existence of a debt, it also directly quotes from 15 U.S.C. § 1692f(6). Because this allegation "merely parrot[s] the statutory language of the claims that [plaintiffs] are pleading[,]" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009), it is not sufficient, without more, to save plaintiffs' FDCPA claim.

21

that defendant was a 'debt collector;' 2) *that there was an attempt to collect a debt*; and 3) the collection practice was abusive or unfair as defined under the FDCPA." (emphasis added)); *Hill v. Mutual Hosp. Serv., Inc.*, 454 F. Supp. 2d 779, 782 (S.D. Ind. 2005) ("[T]he threshold requirement for enforcing the FDCPA is that the alleged prohibited practices have been used in an attempt to collect a debt.").

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C.A. § 1692a(5). In this case, plaintiffs have not alleged the existence of a debt, that either defendant BONY or defendant Safeguard were attempting to collect a debt, or even that defendant BONY or defendant Safeguard mistakenly believed that plaintiffs were obligated to pay a debt.

In response to this argument, plaintiffs direct the court to 15 U.S.C. § 1692f(6), which states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > **(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> >
> > > **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

**(B)** there is no present intention to take possession of the property; or

**(C)** the property is exempt by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6). Plaintiffs cite this provision for the proposition that "taking nonjudicial action to effect dispossession of property without a present right to possession of the property is collecting a debt." (DE # 35 at 8.)

This argument is not persuasive for two reasons. First, when § 1692f lists conduct that violates that section, it presupposes that the actions are used in an attempt to collect a debt. 15 U.S.C. § 1692f ("A debt collector may not use unfair or unconscionable means *to collect or attempt to collect any debt.*" (emphasis added)). Second, defendants argument that anyone that takes any "nonjudicial action to effect dispossession of property without a present right to possession of the property" is actually collecting a debt would extend the protections of the FDCPA well beyond its intended purpose (DE # 35 at 8), to protect consumers from debt collection abuses, 15 U.S.C. § 1692(e), because it would make the FDCPA applicable to situations, like the case at hand, where there is no hint of any attempt to collect a debt or any attempt to collect an alleged debt. This is not what the FDCPA was intended to do, and plaintiffs' FDCPA claim (Count F) is therefore dismissed.[12]

_____

[12] Because the arguments defendant BONY raised in its motion to dismiss apply equally to defendant Safeguard, and because plaintiffs had an adequate opportunity to respond to defendant BONY's arguments, the court will also dismiss Count F as it relates to defendant Safeguard. *Malak*, 784 F.2d at 280 ("Where one defendant files a motion for

## IV.    CONCLUSION

Defendants Bank of New York Mellon Corporation (DE # 27) and Safeguard

Properties, LLC's (DE # 18) motions to dismiss are **GRANTED** as they relate to

plaintiffs's criminal trespass claim under IND. CODE § 35-43-2-2(a)(1) (Count B, DE # 8 at

DE ¶ 37),[13] plaintiffs' invasion of privacy claim (Count E), and plaintiffs' claim under

the Fair Debt Collection Practices Act (Count F), and **DENIED** as to plaintiffs' civil

conspiracy claim (Count A), plaintiffs' remaining claims under the Indiana Crime

Victim's Relief Act (Count B), and plaintiffs' intentional infliction of emotional distress

claim (Count D.) Neither defendant moved to dismiss plaintiffs' trespass claim (Count

C) or plaintiffs' negligent hiring claim (Count H), and defendant BONY did not move to

---

summary judgment which the court grants, the district court may *sua sponte* enter summary
judgment in favor of additional non-moving defendants if the motion raised by the first
defendant is equally effective in barring the claim against the other defendants and the
plaintiff had an adequate opportunity to argue in opposition to the motion."); *see Hecking*,
2006 WL 2598265, at *3 n.1 (applying *Malak* in 12(b)(6) context). Because the court is
dismissing plaintiffs' FDCPA claim against defendant Safeguard on these grounds, it will
not address the arguments Safeguard made regarding plaintiffs' FDCPA claim in its own
motion to dismiss.

In their response to defendant Safeguard's motion to dismiss, plaintiffs request to
be allowed to amend their FDCPA claim against Safeguard, in the event the court
dismissed that claim, in order to allege additional facts in support of their contention that
Safeguard is a "debt collector" under the FDCPA. (DE # 30 at 6 n.1.) Because the court is
dismissing plaintiffs' FDCPA claim on account of defendant BONY's arguments that
plaintiffs were not "consumers" and that plaintiffs have not alleged there was an attempt
to collect a debt or an alleged debt, and because plaintiffs did not request leave to amend
their complaint in response to BONY's arguments, (DE # 35 at 8-9), plaintiffs' request to
amend their complaint is denied.

[13] There are other portions of Count B that have not been dismissed. (See (DE # 8 at
¶¶ 34-36, 38-41.)

dismiss plaintiffs' negligence claim (Count G), which plaintiffs' brought against BONY only. Therefore, those claims also remain pending.

**SO ORDERED.**

Date: August 7, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT