UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| GERALD P. GORDON and | ) |
| TAHARA D. BROWN, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:12 CV 18 |
| | ) |
| BANK OF NEW YORK MELLON | ) |
| CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the court on defendant Safeguard Properties, LLC's, ("Safeguard") motion for summary judgment. (DE # 87.) For the following reasons, the motion is granted in part and denied in part.

I.  BACKGROUND

On November 22, 2010, plaintiffs, Gerald Gordon and Tahara Brown, purchased a single-family residence located in Lake Village, Indiana ("the Property"). (DE # 88 at 6; DE # 91 at 1.) The Property was situated among several parcels of land with complicated title issues. (DE # 88 at 5; DE # 88-3, Gordon Dep. at 7-8.) Some of the adjacent parcels were previously owned by Steven Ashcraft. (DE # 88 at 5.) Through foreclosure proceedings in 2009, two of Ashcraft's parcels adjacent to the Property were conveyed from CIT Group to defendant Bank of New York Mellon ("BONY"). (*Id.*) Situated directly to the north of the Property, and the residence thereupon, BONY's parcels did not feature any structures or improvements. (*Id.*)

Shortly after acquiring the parcels, BONY's mortgage servicer, Vericrest Financial n/k/a Caliber Home Loans ("Vericrest"), hired two real estate brokers to perform an occupancy check on the BONY parcels. (DE # 88 at 5.) BONY mistakenly believed that its parcels included the land on which the residence was situated. (*Id.*) When one of the brokers, Greg Whaley, arrived to perform the check, he was greeted by Ashcraft, who apprised him of the complicated title issues with the Property and the adjoining parcels. (*Id.*) Whaley confirmed the title complications with the Newton County Building Commissioner and reported these concerns back to Vericrest. (*Id.*) In response, Vericrest referred the matter to its foreclosure department to file a title claim. (DE # 88 at 5; DE # 88-4, Grimes Dep. at 48.)

It is in this interim period, while Vericrest was clearing up the title issues with the BONY parcels, that plaintiffs bought the Property along with the residence and other structures upon it. (DE # 88 at 6; DE # 91 at 1-2.) However, within a month, they were obliged to leave the state for work purposes. (DE # 88 at 6; DE # 91 at 1.) Thus on December 16, 2010, plaintiffs secured and winterized the Property and left for Arizona. (*Id.*)

From the facts that follow, it is clear that BONY and Vericrest had not realized their mistake and still believed that their parcels included part of the Property and the residence. On February 17, 2011, Vericrest notified Whaley that it was "ready to move" on the BONY parcels and instructed him to perform another occupancy check, photograph the premises, and change the locks. (DE # 88 at 6.) Whaley arrived at the

Property between February 15, 2011, and February 19, 2011, and found the north door to the property standing wide open and the secondary structures unlocked as well. (DE # 88 at 7; DE # 88-5, Whaley Dep. at 23-24.) Whaley hired a locksmith to change the locks and put a lockbox on the residence. (*Id.*) Customarily, Whaley would not be present while the locksmith changed the locks, but rather he would simply instruct the locksmith as to what code to use on the lockbox. (DE # 88-5, Whaley Dep. at 46.)

Meanwhile, Vericrest hired defendant Safeguard to perform property preservation services with the following instructions: "Safeguard- Please do not do this trash out yet, our agent will rekey but not sure about personal property yet but it is vacant. Please have all other services done."[1] (DE # 88 at 6; DE # 91 at 2.) Safeguard in turn assigned its own vendors to perform various services on the Property including inspections, winterizing and landscaping. (DE # 88 at 7; DE # 91 at 2.) As part of that assignment, Safeguard instructed its initial vendors, Stan and Judy Kush to not perform a trash out at that time. (DE # 88 at 7.)

The Kushes arrived at the Property on February 19th and accessed the residence by using the lockbox code. (DE # 88-7, J. Kush Affidavit at ¶ 11; DE # 88-8, S. Kush Affidavit at ¶ 11.) They winterized the pipes in the residence and took pictures for purposes of generating a bid for further services including a trashout. (*Id.*; DE # 88-2, Cogan Dep. at 42.) The Kushes did not perform a trashout that day, nor did they

---

[1] "Trash out" refers to the removal of debris and personal belongings from a property. (DE # 88 at 7.)

remove any personal belongings from the Property. (DE # 88-7, J. Kush Affidavit at ¶ 14; DE # 88-8, S. Kush Affidavit at ¶ 14.) They left the residence secured with the lockbox and did not return to the Property. (DE # 88-7, J. Kush Affidavit at ¶ 17, 19-20; DE # 88-8, S. Kush Affidavit at ¶ 17, 19-20.)

Shortly thereafter, a Vericrest employee notified Safeguard that further title issues had arisen, and instructed Safeguard: "Please hold off on services for right now . . . Do not do trashout or do anything at this time. I will pause your task." (DE # 88 at 8; DE # 91 at 2.) However, Vericrest did not issue a "hard cancel" for Safeguard's services, nor did Safeguard "flag" the account to prevent future services. (DE # 88 at 8; DE # 88-2, Cogan Dep. at 75-76, 90-92.) As a result, the property was still listed as "active" in Safeguard's computer system. (*Id.*) Thus, when grass cutting season arrived in April, Safeguard's computer system automatically ordered a vendor to cut the grass at the Property. (*Id.*) In the months of April and May, Safeguard's vendor, Lawn and Snow Pros Plus ("Snow Pros"), cut the grass at the Property a total of four times. (DE # 88-2, Cogan Dep. at 30, 95.) Snow Pros did not have the code for the lockbox to access the residence. (*Id.* at 38.)

On May 3, 2011, Safeguard sent a third vendor, Mike Eby, to perform a quality control check on the Property. (DE # 88 at 9; DE # 91 at 2.) Eby found the residence secure, accessed it with the lockbox code, and took pictures of the Property. (DE # 88-6 at ¶¶ 11-13.) Eby states that he did not remove any property, that he secured the residence as he left, and did not return to the Property thereafter. (*Id.* at ¶¶ 15-17.)

4

On May 12, 2011, Vericrest finally issued a "hard cancel" on the account and thus ended Safeguard's involvement with the property. (DE # 88 at 9.) Plaintiffs allege that on June 2, 2011, Ashcraft's son checked on the Property and found the front door of the residence unsecured and noticed that a substantial amount of plaintiffs' personal property was missing. (*Id.*; DE # 8 at ¶ 21-22.) On June 7, 2011, plaintiffs paid to have their locks replaced. (DE # 88 at 9; DE # 8 at ¶ 25.)

Plaintiffs finally returned to the Property on August 11, 2011. (DE # 88 at 9; DE # 91 at 3.) Upon arrival they observed that the back door had been broken down and that all of the doors showed signs of damage. (*Id.*; DE # 8 at 26.) The house had been ransacked and most of their personal property was gone. (*Id.*)

On March 22, 2012, plaintiffs filed the current action against defendants BONY and Safeguard. In their complaint, plaintiffs bring the following claims against both defendants: civil conspiracy (Count A), violations of the Indiana Crime Victim's Relief Act (Count B), trespass (Count C), intentional infliction of emotional distress (Count D), invasion of privacy (Count E), violations of the Fair Debt Collection Practices Act (Count F), and negligent hiring and supervision (Count H). Additionally, plaintiffs have brought a negligence claim against BONY, alone (Count G).

Safeguard (DE # 18) and BONY (DE # 27) moved to dismiss Counts A, B, D, E, and F of the amended complaint. Those motions were granted in part and denied in

5

part. (DE # 42.) The remaining claims are A, B (in part),[2] C, D, G (only as to BONY) and H.

Safeguard now moves for summary judgment on all remaining claims. (DE # 87.) BONY, for its part, has not moved for summary judgment. Thus, plaintiffs' negligence claim (Count G), which was brought only against BONY, will not feature in the court's analysis. However, where Safeguard's arguments would apply equally to BONY, the court will address the claim as to both defendants. *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986) ("Where one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiffs had an adequate opportunity to argue in opposition to the motion.").

## II. LEGAL STANDARD

Defendants have moved for summary judgment. Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact

---

[2]Plaintiffs' claim under the Indiana Crime Victims Relief Statute was dismissed insofar as it was premised on a criminal trespass claim under Indiana Code § 35-43-2-2(a)(1). (DE # 42 at 24.)

and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

## III. DISCUSSION

### A. *Intentional Infliction of Emotional Distress*

Safeguard has moved for summary judgment on plaintiffs' claim of intentional infliction of emotional distress (Count D). In their response, plaintiffs do not contest the dismissal of this count. (DE # 91 at 22.) As such, Safeguard's motion is granted as to this count. Furthermore, plaintiffs' allegations cast BONY as either principals of, or co-conspirators with Safeguard in committing the same underlying conduct. Plaintiffs have had ample opportunity to oppose this motion but they have instead conceded the claim and thus, summary judgment is also granted as to BONY. *See Malak,* 784 F.2d at 280.

### B. *Civil Trespass*

Safeguard has also moved for summary judgment on plaintiffs' claim for civil trespass (Count C). Civil trespass, in Indiana, requires only that plaintiffs prove ownership of the land and that the defendant entered without authority. *Calumet Nat'l Bank v. AT&T*, 682 N.E.2d 785, 788 (Ind. 1997). It is undisputed that plaintiffs owned the Property and the residence. It is likewise undisputed that Safeguard ordered its vendors to perform services on the Property and that they did so on several occasions. The question, then, is whether Safeguard is liable for the vendors' actions. Safeguard considers its vendors to be independent contractors and urges the court to draw the same conclusion. (DE # 88 at 3-4)

The general rule in Indiana is that a principal is not liable for the acts of an independent contractor, *Prest-O-Lite v. Skeel,* 106 N.E. 365, 367 (Ind. 1914) whereas, under the doctrine of *respondeat superior*, a principal can be liable for the acts of its employees, *Konkle v. Henson,* 672 N.E.2d 450, 456 (Ind. 1996). Indiana has adopted a ten-factor analysis for determining whether a tort-feasor is an employee or an independent contractor. *Moberly v. Day*, 757 N.E.2d 1007 (Ind. 2001). The factors are: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment whether by the time or by the job; (h) whether or not the work is part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business. *Id.* at 1010.

Applying the factors to the case at hand there are significant points in both directions. To begin with, the parties give competing characterizations regarding the extent of control which Safeguard exercised over its vendors. Safeguard emphasizes that its vendors were "answerable for the results only, not how they went about

9

accomplishing their tasks." (DE # 88 at 15.) However, plaintiffs convincingly point to the fact that vendors were given detailed, four-page work orders that specified the work to be done and the manner in which they were to be completed. (DE # 91 at 12.) Moreover, these instructions were backed up by a regime of quality control checks on their work. (*Id.*)

The business or occupations of Safeguard and its vendors are not particularly distinct, either. Safeguard is itself a property preservation company while its vendors provided property preservation services (the Kushes and Eby) and lawn care services (Snow Pros). Furthermore, lawn care and property preservation are not highly-skilled or specialized occupations. These factors weigh in favor of finding that Safeguard's vendors should be considered employees.

On the other hand, both parties agree that the vendors supplied their own tools and instrumentalities and that the vendors were paid by the job rather than by the hour. (DE # 88 at 16; DE # 91 at 14.) Plaintiffs also concede that the vendors entered into contracts acknowledging their status as independent contractors. (DE # 91 at 15.) Moreover, there was no guarantee of future work and thus the length of the vendors' employment was irregular and non-continuous. These factors lean towards the conclusion that the vendors were independent contractors.

In short, there is a genuine dispute of material facts as to whether Safeguard's vendors were employees or independent contractors. This dispute precludes the entry of summary judgment as to plaintiffs' claim of civil trespass (Count C).

C.    *Indiana Crime Victim's Relief Act*

Safeguard moves for summary judgment on all of plaintiffs' claims under the Indiana Crime Victim's Relief Act ("ICVRA") (Count B). "The Indiana Crime Victim's Relief Act . . . permits victims of certain crimes who have suffered a pecuniary loss to recover treble damages from the perpetrator." *Sharkey v. Cochran*, No. 1:09–cv–0517, 2012 WL 967057, at *5 (S.D. Ind. Mar. 21, 2012). To recover under the Indiana Crime Victim's Relief Act, plaintiffs need not prove that a defendant was actually convicted of a crime. *Quicken Loans, Inc. v. Downing*, No. 1:10–cv–1565, 2012 WL 4762411, at *4 (S.D. Ind. Oct. 5, 2012). Instead, plaintiffs must prove that the defendant committed the alleged crime by a preponderance of the evidence. *Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999). "[B]ecause the statute is punitive, the Indiana Crime Victim's Relief Act is to be strictly construed." *Downing*, 2012 WL 4762411, at *4.

Plaintiffs' amended complaint alleges seven predicate offenses under this count: (a) Criminal Mischief, § 35-43-1-2(a); (b) Residential Entry, § 35-43-2-1.5; (c) Criminal Trespass, 35-43-2-2(a)(1); (d) Criminal Trespass § 35-43-2-2(a)(4); (e) Criminal Trespass, 35-43-2-2(a)(5); (f) Theft § 35-43-4-2(a); and, (g) Conversion, § 35-43-4-3. (DE # 8 at ¶¶ 35-41.)

The court has previously dismissed Trespass under section 2(a)(1) as a predicate offense. (DE # 42 at 12.) Furthermore, plaintiffs indicate that they are no longer pursuing claims predicated upon Criminal Mischief and Residential Entry. (DE # 91 at 20 n.20.) Accordingly, Safeguard's motion is granted as to those two predicate offenses

11

and those claims are dismissed as to both defendants. The remaining predicate offenses are Trespass (under sections 2(a)(4) and 2(a)(5)), Theft, and Conversion.

Safeguard wrongly contends that the court has already dismissed all three Trespass sections as predicate offenses. (DE # 95 at 10.) The court dismissed plaintiffs' trespass claim only as to section 2(a)(1) and not as to the two remaining sections.[3] (DE # 42 at 24.) Since Safeguard has failed to raise any arguments as to those two Trespass sections, it has failed to meet its burden for summary judgment on these two predicate offenses. Accordingly summary judgment is denied insofar as the ICVRA claim relates to Criminal Trespass under sections 2(a)(4) and 2(a)(5).

The final predicate offenses, Theft and Conversion, go straight to the heart of the case. Indiana Code section 35-43-4-2(a) provides that a person who knowingly or intentionally exerts unauthorized control over the property of another person, with intent to deprive the other person of any part of its value or use, commits theft. Likewise, Indiana Code Section 35-43-4-3 states that a person who knowingly or intentionally exerts unauthorized control over the property of another person commits criminal conversion.

Safeguard contends that plaintiffs have failed to present any evidence that Safeguard's vendors removed any personal belongings from the Property. (DE # 88 at 11.) Safeguard points out that plaintiffs were away from their home for eight months

---

[3]This was explicitly spelled out in a footnote where the court enumerated the paragraphs of the amended complaint that were not dismissed as predicate offenses for plaintiffs' ICVRA claim. *(see Id.* at 24 n.13.)

12

and had no way of knowing who was in their home during that period. (*Id.*) Furthermore, Safeguard's vendors have all provided sworn statements denying that they removed any of plaintiffs' property. (*Id.*) Plaintiffs offer little to counter this testimony.

It is undisputed that plaintiffs left the residence secured on December 10, 2010 and that, in mid-February, 2011, prior to Safeguard's involvement with the Property, Whaley arrived and found the door to the residence open and unsecured. The only reasonable inferences from these facts are either that plaintiffs had actually failed to secure their residence or that someone other than Safeguard had broken into the house.

Safeguard's first vendor did not arrive until after Whaley had locks changed and the residence re-secured. The Kushes' testimony is that they accessed the residence with the lockbox code and left it secured. It is undisputed that Safeguard's second vendor, Snow Pros, did not have access to the residence at all but merely cut the grass. The final vendor, Eby, found the residence secured and left it that way on May 3, 2011. The evidence also shows that after Safeguard's involvement with the Property ended, plaintiffs' residence was broken into on at least two other occasions before plaintiffs returned. (*See* DE # 88 at 9.) All of this evidence points to the conclusion that plaintiffs' property was repeatedly burglarized by someone other than Safeguard and its vendors.

Plaintiffs' evidence to the contrary is uncompelling. First, they point to an entry in the Vericrest computer system from February 21, 2011, suggesting that a trash out had been ordered and that a vendor was returning to complete it. (DE # 91 at 4.) Yet,

they cannot provide any evidence that any Safeguard vendor actually followed through on that order and completed a trash out. It is undisputed that the Kushes did not return to the property after February 19, 2011, and plaintiffs cannot point to any other vendor who completed the trash out.

Plaintiffs also point to photos of the Property uploaded into Vericrest's system with labels such as "Trashout" and "Removing Personals." (*Id.*) However, Safeguard counters that those photographs were taken to generate a bid to perform further services. (DE # 95 at 3.) In support, Safeguard produced an alternative set of the exact same photos where the labels read "Bid Trashout" and "Bid Removing Personals." (*See* DE ## 95-3, 95-4.)

Plaintiffs' final support comes from a "before and after" comparison of the work reports by the Kushes in February and Eby in May. Plaintiffs point out various items of personal property that can be seen in three of the Kush photographs that are then absent from Eby's photographs in May. (DE # 91 at 6.) To plaintiffs, this proves that at least some of their property was removed or rummaged through during the time frame when Safeguard had access to the roperty. They also point to the fact that the Kushes estimated the value of the personal items at the property at $5,000, while Eby reported that there were no personal items on the Property. (*Id.* at 5.)

These last points, however are still insufficient to create a triable issue of fact. As Safeguard points out, all but one of the items in the before and after photographs were stored in open, unsecured secondary structures such as the garage and shed. (DE # 95 at

14

4.) As such, any number of people who entered the Property could have carried those items off. The fact that unsecured, unattended items were stolen says little as to whether it was Safeguard's vendors who took them.

The difference between the personal property valuations also carries little weight as plaintiffs have not presented any evidence as to what property was included in the first valuation, where the various items were stored, and whether these items actually turned up missing. From these sparse facts, it is just as likely that the Kushes and Eby applied different criteria for their appraisals. The factual record to support this theory is far too underdeveloped to carry the weight that plaintiffs place on it.

Lastly, plaintiffs also cannot escape the fact that a number of other people besides Safeguard's vendors would also have had access to the residence during this same period. This includes any of BONY's agents such as Whaley and his brother, and the locksmith that they employed. Weighed against the largely uncontroverted testimony of Safeguard's vendors and plaintiffs' inability to account for all of the people who had access to the Property, plaintiffs' theories raise little more than a "metaphysical doubt" rather than a genuine dispute of fact that requires resolution by a jury. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, Safeguard's motion will be granted on Count B as to the predicate offenses of Theft and Conversion.[4]

---

[4]Given that the court's analysis of this claim looked only at the evidence of whether Safeguard's vendors committed the predicate offenses, this holding cannot be fairly extended to BONY and Count B remains pending against it except for the predicate

D.   *Civil Conspiracy*

Safeguard also moves for summary judgment on plaintiffs' civil conspiracy claims (Count A). Under Indiana law, a civil conspiracy "is a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not itself unlawful, by unlawful means." *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (1966). While Indiana does not recognize a cause of action for "civil conspiracy," the state recognizes an action for damages resulting from a conspiracy. *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind.Ct.App. 1998). Essentially, this is an alternative way of asserting concerted action in the commission of a tort. *Birge v. Town of Linden,* 57 N.E.3d 839, 846 (Ind. Ct. App. 2016); *Boyle v. Anderson Fire Fighters Ass'n*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986).

Having denied summary judgment as to plaintiffs' civil and criminal trespass claims, it is also denied to the extent that the conspiracy claim is premised upon the underlying trespass allegations. Safeguard contends that plaintiffs have not put forth any evidence that Safeguard and BONY acted in concert to commit any of the underlying torts. However, it is undisputed that BONY, through its servicer, Vericrest, hired Safeguard to provide preservation services at the Property, and it is the provision of these very same services that forms the basis of plaintiffs' allegations of trespass. To the extent that Safeguard's actions constituted a trespass, its business relationship with

---

offenses of Criminal Mischief and Residential Entry.

BONY is sufficient to support a civil conspiracy claim as well. Safeguard's motion for summary judgment is denied as to Count A.

E. *Negligent Hiring and Supervision*

Finally, Safeguard has also moved for summary judgment on plaintiffs' negligent hiring and supervision claim (Count H). Indiana recognizes a cause of action against an employer for negligent hiring and retention of an employee. *Clark v. Aris,* 890 N.E.2d 760, 763 (Ind. Ct. App. 2008). The standard that governs these claims is set forth in Restatement (Second) of Torts § 317. *Konkle v. Henson,* 672 N.E.2d 450, 454 (Ind. Ct. App. 1996).[5]

The court has already determined that no factual dispute exists as to whether Safeguard's vendors took, removed or disposed of plaintiffs' personal property. Thus, by extension, plaintiffs cannot prevail on a claim of negligent hiring insofar as it is premised upon that conduct. Plaintiffs' remaining theories of recovery are for civil and

---

[5] Section 317 States:
"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using the chattel of the master (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control."
Restatement (Second) of Torts § 317.

criminal trespass, and these too, fail to support a claim for negligent hiring and supervision.

The tort of negligent hiring and supervision is inapplicable when an employee is acting within the scope of his employment. *See* Restatement (Second) of Torts § 317, cmt. a (1965) ("The rule stated in this section is applicable only when the servant is acting outside the scope of his employment. If the servant is acting within the scope of his employment, the master may be vicariously liable under the principles of the law of agency."); *Clark,* 890 N.E.2d at 765; *Tindall v. Enderle*, 320 N.E.2d 764, 767-68 (Ind. Ct. App. 1974) (observing that the tort of negligent hiring of an employee arises "only when an . . . employee steps beyond the recognized scope of his employment to commit a tortious injury upon a third party.").

Plaintiffs allege that Safeguard's vendors trespassed upon the Property pursuant to work orders from Safeguard. Such conduct is squarely within the scope of their employment by Safeguard and thus cannot support a claim for negligent hiring and supervision. Accordingly, Safeguard's motion for summary judgment is granted as to Count H.

### III. CONCLUSION

For the foregoing reasons, Safeguard's motion for summary judgment (DE # 87) is **GRANTED in part** and **DENIED in part**. Plaintiffs' intentional infliction of emotional distress claim (Count D) is dismissed against both defendants. Plaintiffs' claims under the ICVRA (Count B) are dismissed for the predicate offenses of Theft (DE # 8 at ¶ 40)

and Criminal Conversion (DE # 8 at ¶ 41) against Safeguard and for Criminal Mischief (DE # 8 at ¶ 35) and Residential Entry (DE # 8 at ¶ 36) against both defendants. Plaintiffs' claim for negligent hiring and supervision (Count H) is dismissed against Safeguard.

Plaintiffs' claims for civil conspiracy (Count A), civil trespass (Count C) and for Criminal Trespass under the ICVRA (Count B; DE # 8 at ¶¶ 38-39) remain pending against Safeguard. BONY did not move for summary judgment and Counts A, B, C, G and H remain pending.

Plaintiffs have also filed a motion for leave to file a surreply brief in opposition to the motion for summary judgment. (DE # 96.) Safeguard opposed this motion. (DE # 97.) Plaintiffs' proposed surreply did not factor into the court's analysis, and the motion (DE # 96) is **DENIED as moot.**

Pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and Local Rule 72-1(b), the court hereby **ORDERS** that this case be referred to Magistrate Judge Paul R. Cherry, for purposes of holding a settlement conference within 60 days of the date of this order.

The court will set a trial date under a separate order.

              **SO ORDERED.**

Date: February 17, 2017

            s/James T. Moody
            JUDGE JAMES T. MOODY
            UNITED STATES DISTRICT COURT